URANTIA FOUNDATION, Plaintiff,

v.

Kristen MAAHERRA, Defendant.

Civ. No. 91–0325 PHX WKU.

United States District Court,
D. Arizona.

Feb. 27, 1995.

L. Dale Owens and Scott A. Wharton, of Booth, Wade & Campbell, Atlanta, GA, for plaintiff and counter-defendant, Urantia Foundation.

Joseph D. Lewis, of Cleary & Komen, Washington, DC, for defendant and counter-claimant, Kristen Maaherra.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON TRADEMARK ISSUES

URBOM, Senior District Judge.

This cause is before me on the plaintiff's motion for partial summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. The plaintiff, Urantia Foundation, alleges that the defendant, Kristen Maaherra, has infringed two of its registered trademarks. The defendant denies the allegation of infringement and contends that the plaintiff's marks are generic and were obtained fraudulently. Upon review of the record, I find that the plaintiff's motion shall be granted in part and denied in part.

### I. FACTUAL BACKGROUND

The Urantia Foundation was created in 1950 with an objective of educating the peoples of the world in an attempt to increase and enhance their comfort, happiness, and well being. The plaintiff employs various means to accomplish this goal, one of which is the sale of *The URANTIA Book*[1] and related publications. In 1971, the plaintiff registered "URANTIA" and the symbol of three blue concentric circles as trademarks[2] for books manufactured, printed, or distributed by the Urantia Foundation. (Pl.'s Compl. at Exs. C, D.) In 1979, the plaintiff expanded its trademark protection to include printed publications in general. *Id.* at E, F.

The defendant has been an avid reader of *The URANTIA Book* since 1969, and "[o]ver the years, she has given away many study aids for [the book]." (Def.'s Statement of Facts in Opp'n to Pl.'s Mot. for Partial Summ.J on Trademark Issues ¶ 29.) [hereinafter Def.'s Facts]. In 1990, the defendant prepared a study aid that included the text of *The URANTIA Book.* (Def.'s Facts ¶ 31.) Thereafter, the defendant distributed the

---

1. In my Memorandum and Order dated February 10, 1995, 895 F.Supp. 1347, I found that the copyright renewal in the book was invalid and the book had therefore entered the public domain.

2. The term "trademark" is defined as "any word, name, symbol, or device, or any combination thereof ... used by a person ... to identify and distinguish his or her goods ... from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127 (1988).

aforementioned study aid to various individuals free of charge. *Id.* ¶ 32.

In September, 1990, the Urantia Foundation was notified that an unidentified source was distributing computer disks that contained the entire text of *The URANTIA Book.* (Second Aff. of Wharton Ex. A, ¶ 16.) In November, 1990, the plaintiff discovered a second set of computer disks that not only contained the entire text of *The URANTIA Book* but bore the plaintiff's trademarks: "URANTIA" and the symbol of three blue concentric circles. *Id.* ¶ 22. In January, 1991, the plaintiff surmised that the defendant was the source of the computer disks and, shortly thereafter, filed the instant action against her. The defendant admits she had full knowledge of the plaintiff's use and registration of its trademarks when she distributed the computer disks but denies that her actions constitute infringement. ((Revised) Def.'s Substitute 2nd Am. Answer and Countercl. for Cancellation of Federal Trademark Registrations at 4, ¶¶ 24–25.) [hereinafter Def.'s Answer].

## II. STANDARD OF REVIEW

A motion for summary judgment is properly granted if the pleadings and evidence submitted in support of the motion show that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 683 n. 11 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 668 (9th Cir.1980). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *First Nat. Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). If the mov-

ing party meets its initial burden, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all evidence is considered in a light most favorable to the party opposing the motion. *Blair Foods,* 610 F.2d at 668 (citations omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted).

## III. LEGAL DISCUSSION
### Trademark Claim

The plaintiff brings this action pursuant to the Trademark Act of 1946.[3] Section 1114 of the Act requires that the plaintiff in a trademark infringement action show that the defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of the plaintiff's registered mark in connection with a sale or distribution of goods or services, and (4) that such a use is likely to cause confusion. *See* 15 U.S.C. § 1114(1)(a) (1988); *Gruner + Jahr USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993); *Kelley Blue Book v. Car-Smarts, Inc.,* 802 F.Supp. 278, 284 (C.D.Cal. 1992). Ms. Maaherra admits that she did not have the plaintiff's consent to reproduce exact copies of the plaintiff's marks on her computer disks before she distributed the disks throughout the United States. (Def.'s Answer at 3–4, ¶¶ 13, 25–27.) Therefore, to prevail on its claim of trademark infringement, the plaintiff must overcome only two obstacles. The plaintiff must prove that it has a valid mark entitled to protection and that the defendant's use of the mark is likely to cause confusion in the minds of the public.

#### 1. Trademark Validity

##### a. Certificates as Evidence

■ The defendant admits that the plaintiff has obtained trademark registration certificates for both "URANTIA" and the sym-

---

**3.** The Trademark (Lanham) Act, ch. 540, 60 Stat. 427, as amended, 15 U.S.C. §§ 1051–1127 (1988 & Supp. V 1993).

bol of three blue concentric circles. (Def.'s Answer at 3, ¶ 10.) "Federal registration of a trademark endows it with a strong presumption of validity." *Coca–Cola Co. v. Overland, Inc.,* 692 F.2d 1250, 1254 (9th Cir. 1982) (citing *Miss Universe, Inc. v. Patricelli,* 408 F.2d 506, 509 (2d Cir.1969)); *accord Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 196, 105 S.Ct. 658, 662–63, 83 L.Ed.2d 582 (1985) (citation omitted); *see* 15 U.S.C. § 1057(b) (1988). In addition to being *prima facie* evidence of the registered mark's validity, the certificates of registration are *prima facie* evidence of the registrant's ownership of the mark and the registrant's exclusive right to use the mark. *Pacific Telesis Group v. International Telesis Communications,* 795 F.Supp. 979, 982 (C.D.Cal.1991), *aff'd,* 994 F.2d 1364 (9th Cir. 1993). The defendant attempts to rebut this presumption by claiming that the plaintiff's trademarks are generic and were obtained fraudulently. The plaintiff responds by arguing that its trademarks are incontestable.

### b. Presumption of Incontestability

■ The plaintiff claims that "since the Foundation's marks all have been registered and continuously used for more than five years ... they have become *incontestable.*" (Br. in Support of Pl.'s Mot. for Partial Summ. [J.] on Trademark Issues at 4.) [hereinafter Pl.'s Br.]. However, before a registered mark may be deemed incontestable "an affidavit [shall be] filed with the Commissioner within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration." 15 U.S.C. § 1065(3) (1988). No such affidavit is in the record.

Moreover, whether the plaintiff's marks have acquired incontestable status is relatively unimportant. The defendant alleges the defenses of genericness, fraud, and "no likelihood of confusion." Each of these allegations, if proven, overcomes a mark's incontestable status. *See* 15 U.S.C. § 1065(4) (1988) ("[N]o incontestable right shall be acquired in a mark which is ... generic."); 15

U.S.C. § 1115(b)(1) (1988) (declaring incontestability subject to a defense of fraud); *Gruner,* 991 F.2d at 1078 (explaining Trademark Law Revision Act of 1988[4] "made clear that incontestability does not relieve the trademark owner from the requirement of proving likelihood of confusion").

### c. The Fraud Defense

■ The defendant claims that the plaintiff engaged in "fraudulent activities in obtaining federal trademark registrations of the concentric circles symbol and the names Urantia and Urantian." (Def.'s Answer at 5, ¶ 4.) The alleged fraudulent activities include the plaintiff's failure to disclose to the United States Patent and Trademark Office the possible religious significance of the plaintiff's marks. *Id.* at 20–21. However, "[n]othing in the Constitution prohibits a religious organization from owning property— and a trademark is a property right." *National Bd. of YWCA v. YWCA of Charleston,* 335 F.Supp. 615, 625 (D.S.C.1971).

In support of her claim, the defendant offers numerous broad and unsubstantiated allegations but only one piece of evidence, a letter from a Trademark Examiner. *See* (Def.'s Facts at App. 1A.) The letter addresses the inconsistencies in the plaintiff's application to register a mark identified by Serial No. 398,004. The trademarks at issue are identified by Serial Nos. 157,177; 157,-234; 372,049; and 372,050. *See* (Pl.'s Compl. at Exs. C–F.) Therefore, any statements made by the plaintiff that prompted the letter or were in response to the letter is not shown to have been a deliberate attempt to mislead the Patent and Trademark Office into registering the trademarks at issue. *See Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1444 (9th Cir.1990) (describing elements of successful fraud claim); *Official Airline Guides, Inc. v. Churchfield Publications, Inc.,* 756 F.Supp. 1393, 1399–400 (D.Or.1990) (holding *scienter* required to prevail on fraud claim), *aff'd sub nom., Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385 (9th Cir. 1993). Accordingly, I find no merit in the defendant's allegation of fraud.

**4.** Trademark Law Revision Act of 1988, Pub.L. No. 100–667, 102 Stat. 3946 (codified as amended in scattered sections of 15 U.S.C.).

#### d. The Genericness Defense

■ "The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic." *Coca–Cola*, 692 F.2d at 1254. Furthermore, the plaintiff is entitled to benefit from any relevant presumptions that support its motion for summary judgment. *Id.* (citing *United States v. General Motors Corp.*, 518 F.2d 420, 441–42 (D.C.Cir.1975)). Therefore, the plaintiff, relying on the aforementioned presumptions, has met its burden of demonstrating that the genericness of its trademarks does not raise a genuine issue of material fact.

The defendant attempts to rebut the plaintiff's presumption against genericness by misrepresenting cases and selectively quoting statutes. Section 1064 of the Lanham Act states in pertinent part:

> A registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service. The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become ... generic.

15 U.S.C. § 1064(3) (1988). The defendant argues that it is impossible to convey the principles espoused in *The URANTIA Book* without using "URANTIA" or the symbol of three blue concentric circles. (Def.'s Answer at 19.) As the first sentence quoted above clearly indicates, a mark does not become generic simply because it identifies a unique product.

The defendant correctly states that the "relevant public" for determining genericness is "the pool of potential purchasers of Urantia books." (Def.'s Br. at 8.) She then inappropriately drains the pool of all but the established "adherents to the Urantia teachings." *Id.* The pool, however, must include *all* potential purchasers: the avid, the novice, and the not yet acquainted. *See, e.g., Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 718 F.2d 327, 330 (9th Cir.1983) (holding relevant public includes not only business operators and participants but also consumers at large), *rev'd on other grounds*, 469

U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *Surgicenters of Am., Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1017 (9th Cir.1979) (finding relevant public includes both medical community and potential patients); *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 983 (3d Cir.1993) (holding relevant public for "air curtain" includes manufacturers, architects, construction companies, building managers, and others); *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir.1989) (finding substantial majority of public considers "Murphy bed" to be generic); *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 640 (Fed.Cir. 1991) (defining relevant public as "public which does or may purchase the goods"); *see also* S.Rep. No. 627, 98th Cong., 2d Sess. 2–4 (1984), U.S.Code Cong. & Admin.News 1984, p. 5708 (explaining relevant public includes both actual and potential purchasers of goods).

The defendant makes the bold statement that "[t]he evidence of dictionaries that *do not* contain the word Urantia is completely irrelevant." (Def.'s Br. at 9.) It strains my imagination to think of a product name "that over time the public adopted, or, rather, expropriated, ... as a synonym for any [product of that genus]," *Murphy Bed*, 874 F.2d at 101, but which does not appear in any known dictionary. "There is no real issue as to the generic nature of the words Urantia and Urantian." (Def.'s Br. at 9.) "The plain fact is that the public at large has *no awareness* of either the word[s] or symbol." *Id.* at 9 n. 7.

Although "URANTIA" and the symbol of three blue concentric circles may be considered generic by a segment of the public that has previously purchased *The URANTIA Book*, the segment is but a fraction of the relevant public. Therefore, I find insufficient evidence to support the defendant's defense of genericness. Hence, I find that the plaintiff has overcome the first obstacle to proving infringement by showing its trademarks to be valid.

#### 2. Likelihood of Confusion

##### a. The Eight Factors

■ Proving one has a valid trademark entitled to protection is rather elementary

when compared to the task of proving that another's use of the trademark is likely to cause confusion to consumers. To conclude that a likelihood of confusion exists, the evidence must show "that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's [use of the] mark." *Gruner*, 991 F.2d at 1077; *accord Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443 (9th Cir.1980). At the time of the alleged infringement, the Urantia Foundation did not have a product that was comparable to the defendant's computer disks. Therefore, the plaintiff's product, *The URANTIA Book*, and the defendant's product, a computerized version thereof with a concordance, are considered to be "related goods"[5] not "competitive goods."[6] To determine whether a likelihood of confusion exists between related goods, the following eight factors are evaluated:

i.   strength of the plaintiff's mark;

ii.   proximity of the goods;

iii.   similarity of the marks;

iv.   evidence of actual confusion;

v.   marketing channels employed;

vi.   type of goods and degree of care likely to be exercised by the purchaser;

vii.   defendant's intent in selecting the mark; and

viii.   likelihood of expansion in the product lines.

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979). The eight factors, however, are not exhaustive, and if the case warrants, other variables may be considered. *Id.* at 348 n. 11 (citations omitted).

### i.   strength of mark

■ The strength of a mark and the degree of protection it will be afforded are determined by the mark's distinctiveness. There are four categories of distinctiveness: generic, descriptive, suggestive, and arbi-

trary or fanciful. As discussed, the plaintiff's trademarks are not generic. Therefore, they must fall into one of the three remaining categories. The plaintiff's product is a book; it's trademarks are "URANTIA" and the symbol of three blue concentric circles. Neither trademark, in and of itself, describes or suggests a book, nor is there any evidence that "URANTIA" is a word in any known language. Furthermore, the defendant admits that each of the marks is derived solely from *The URANTIA Book*. (Def.'s Answer at 10–11, ¶¶ 38, 42.) "A fanciful mark is a name that is made-up to identify the trademark owner's product like EXXON for oil products and KODAK for photography products." *Gruner*, 991 F.2d at 1076; *see also Pacific Telesis*, 795 F.Supp. at 981–82 (finding "TELESIS does not describe any characteristics, functions, uses or qualities of telecommunications services. As applied to such services, it is arbitrary.").

Whether the plaintiff's marks are considered "arbitrary" or "fanciful" is of little importance, because under either label they are deemed to be a strong mark, and "will be afforded the widest ambit of protection from infringing uses." *AMF*, 599 F.2d at 349.

### ii.   proximity of the goods

■ "For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Id.* at 350. In discussing the proximity of the goods, it is not the physical distance between the goods which is evaluated but how closely the goods approximate each other. The use and function of the two products at issue are similar; using either, a consumer would be able to read the entire Urantia book. Apart from the mode of conveyance, the only significant difference in the two products is the inclusion of a concordance with the defendant's product. These differences, however, do not dissuade me from finding that the two products

---

**5.**   Related goods are those goods that would be reasonably perceived by the consuming public to have come from the same source if sold under the same trademark. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 n. 10 (9th Cir.1979).

**6.**   An alleged infringer's goods will be deemed "competitive goods" when they directly compete for sales with the trademark owner's goods. *Id.* at 348.

approximate each other. *See Russell Chem. Co. v. Wyandotte Chems. Corp.*, 337 F.2d 660, 661 (C.C.P.A.1964) (holding when marks are nearly identical, products must be substantially different for confusion to be unlikely).

### iii. similarity of marks

The defendant admits she used "URANTIA" and describes her reproductions of the plaintiff's symbol of three blue concentric circles as "exact replications or as near thereto as practicable." (Def.'s Answer at 4, ¶ 26.) Consequently, I find that the two marks are not only similar but identical.

### iv. actual confusion

■ "Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *AMF*, 599 F.2d at 352 (citing *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635, 639 (9th Cir. 1963)). The plaintiff relies on two letters, written by consumers who had allegedly received the defendant's product, to support its claim of actual confusion. (Third Aff. of Bondi at Ex. C.) The plaintiff, however, does not show that the computer disks to which the aforementioned letters refer originated with the defendant. I find that the existence of only two letters after allegedly five years of infringement is not sufficient proof of actual confusion to weigh this factor in favor of the plaintiff.

### v. marketing channels

■ If convergent marketing channels are employed in the distribution of related products, an increased likelihood of confusion may result. There is scant evidence of such a situation in the instant case. "The Foundation generally offers *The URANTIA Book* to the general public through retail bookstores." (Third Aff. of Bondi at 2, ¶ 3.) In 1994, ninety-six percent of all the English language books sold by the plaintiff were sold to bookstores for resale to the public. *Id.* ¶ 4. The plaintiff also uses other marketing channels typically associated with book distribution: advertisements, conventions, and book fairs. *Id.* at 3, ¶ 5. The defendant, however, is alleged to have distributed free of charge a limited number of computer disks to individuals who had not even solicited the product.

(Second Aff. of Wharton Ex. A at 8–9, ¶ 22.) I find that the marketing channels do not converge and, therefore, this factor weighs in favor of the defendant.

### vi. type of goods and degree of care

If a purchaser has expertise in the field in which the goods fall, or if the goods are expensive or of a highly technical nature, then it is more likely that the purchaser will exercise a higher degree of care in choosing the product. Consequently, the more care one uses in selecting a product, the less likely one is to confuse it with another product. *See AMF*, 599 F.2d at 353. *But see Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971) (warning against undue reliance on "supposed sophistication" of consumers). The plaintiff's book is neither expensive nor highly technical, and its purchasers are not generally bibliophiles. These facts tend to support a finding that confusion is likely.

■ However, at least two facts weigh in the defendant's favor. First, the manner in which the consumers received the defendant's product may have prompted increased suspicion as to its origin and authenticity. Usually, a publisher does not give away its product, especially when the product is a two thousand page book. Second, the plaintiff states that a comparison of the two products revealed only "minor differences." (Second Aff. of Wharton Ex. A at 15, ¶ 39.) If the differences had been substantial, they may have fostered doubt as to the product's legitimacy, but they were simply "typographical errors, resulting in some missing punctuation and extra space, and the absence of any use of italics." *Id.* at 8, ¶ 20.

Courts have adopted two separate approaches to evaluate the significance of the quality of a second comer's product. A product of inferior quality is more likely to injure the trademark owner's reputation, if confusion occurs. Conversely, a product of equal quality may be more apt to promote confusion because consumers are more inclined to assume that similar products come from the same source. *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir.1993) (citation omitted).

I shall adhere to the rationale set forth in *Nikon* and conclude that "unless the junior's product is inferior, the quality factor does not weigh in favor of the senior user." *Id.* Moreover, I find that the "minor differences" in the defendant's product do not render it inferior.

The evidence shows that the recipients of the computer disks were no more likely to exercise a high degree of care in retaining the defendant's product than they were a low degree of care. The factor is therefore neutral.

### vii. defendant's intent

The plaintiff claims that "Maaherra's admission that she used *exact* copies of the Foundation's marks with knowledge of the Foundation's use and registration creates a presumption of intentional infringement." (Pl.'s Br. at 4.) The plaintiff's claim, however, is an overstatement. More accurately stated, a presumption of intentional infringement arises when one party deliberately adopts another's trademark "to obtain advantage from the other's good will." *Academy of Motion Picture Arts & Sci. v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1456 (9th Cir.1991) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 157–58 (9th Cir.), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963)); *accord Toho Co. v. Sears, Roebuck & Co.,* 645 F.2d 788, 791 n. 2 (9th Cir.1981) (explaining it would be error to recognize presumption absent a showing of defendant's intent to "profit *by confusing consumers* "); *Kelley Blue Book,* 802 F.Supp. at 287 (raising presumption upon the showing of defendant's intent to capitalize on plaintiff's reputation); *Pacific Telesis,* 795 F.Supp. at 982 (finding defendant selected "TELESIS with the intent to benefit from the [plaintiff's] goodwill and reputation").

There is no evidence to suggest that the defendant reproduced the plaintiff's marks with an intent to capitalize on the Foundation's reputation. In the absence of showing such an intent, I find this factor to weigh heavily in the defendant's favor.

### viii. likelihood of expansion

"[A] 'strong possibility' that either party may expand [its] business to compete with the other will weigh in favor of finding that the present use is infringing." *AMF,* 599 F.2d at 354 (citation omitted). The defendant does not refute the plaintiff's contention that it "has devoted substantial money and effort to the preparation of an electronic text and concordance of *The URANTIA Book.*" (Second Aff. of Wharton Ex. A at 2, ¶ 4.) Moreover, the plaintiff admits she knew of the plaintiff's plans. (Maaherra Dep. (3–10–91) at 77–78.) Therefore, I find this factor to weigh in favor of the plaintiff.

### b. Balancing the Factors

The first three factors weigh in the plaintiff's favor, as does the last. The defendant, however, has three factors that weigh in her favor. More important, the plaintiff does not prove a likelihood of confusion simply by garnering the benefit of a majority of the factors evaluated.

> A trademark is, of course, a form of business property. But the 'property right' or protection accorded a trademark owner can only be understood in the context of trademark law and its purposes. A trademark owner has a property right only insofar as is necessary to prevent consumer confusion as to who produced the goods and to facilitate differentiation of the trademark owner's goods.

*International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 919 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). Ultimately, I am not convinced that a reasonable jury could not return a verdict in favor of the defendant based upon a finding of "no likelihood of confusion."

**IT IS THEREFORE ORDERED** that the plaintiff's motion for summary judgment, filing 197, is granted as to Count IV of the defendant's counterclaim and as to the defense of genericness and otherwise is denied.